No. 09-10843

# In the United States Court of Appeals
## For the Fifth Circuit

---

*JANIS BROWN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JASON RAY BROWN, DECEASED AND BILLY RAY BROWN,*
*Plaintiffs - Appellees,*

v.

*THOMAS J. CALLAHAN, SHERIFF OF WICHITA COUNTY, TEXAS IN HIS INDIVIDUAL AND OFFICIAL CAPACITY*
*Defendant - Appellant.*

---

## On Appeal from the United States District Court for the Northern District of Texas, Wichita Falls Division
### (No. 7:05-CV-0108-O-KA)

---

## APPELLEES' PETITION FOR RULE 40 PANEL REHEARING

---

TO THE HONORABLE UNITED STATES COURT OF APPEALS:

Appellees, Janis Brown, Individually and as Personal Representative of the Estate of Jason Ray Brown, Deceased, and Billy Ray Brown ("Brown") file this *Petition for Panel Rehearing* under Rule 40 of the Federal Rules of Appellate Procedures and shows the Court as follows:

## I.
## SUMMARY

Brown respectfully requests that this Court grant this Petition for rehearing because the Court did not apply the appropriate review of the evidence in the record.

Specifically, the record demonstrates sufficient evidence to affirm the District Court's denial of Sheriff Callahan's Motion for Summary Judgment

## II.
## ARGUMENT & AUTHORITY

### A. Qualified Immunity

A qualified immunity defense alters the usual summary judgment burden of proof. *See Michalih v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005). Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Id.* The plaintiff bears the burden of negating qualified immunity, *id.,* but all inferences are drawn in his favor.

The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation. *Manis v. Lawson,* 585 F.3d 839, 843 (5th Cir. 2009). A court may rely on either prong of the defense in its analysis. *Id.*

If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004) (citations omitted). Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury. *Williams v. Bramer, 180* F.3d 699, 703 (5th Cir. 1999). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand

that what he is doing violates that right. *Brown v. Miller,* 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been illegal. *Id.* at 236-37.

According to the Fifth Circuit precedent, all inferences from the facts regarding Sheriff Callahan's deliberate indifference must be drawn in Brown's favor. However, this Court's opinion does exactly the opposite. The opinion discards, without mentioning, or by denying its existence, testimony clearly establishing deliberate indifference – (1.) a standing order known by Sheriff Callahan that required unlicensed individuals to prescribe medication in direct contravention of state law (USCA5, Vol. 10, Jt. App. 296-297 ); and, (2.) that this practice directly caused Jason Brown's death (USCA5, Vol. 10, Jt. App. 200-202).

The opinion likewise does not mention the deliberate indifference displayed by Sheriff Callahan in his handling of the *Henson* case. (See *Estate of Henson v. Wichita County, Tex.*, 2008 WL 3287098 (N.D. Tex.) and *Palo, et al v. Dallas Co.*, 2007 WL 2140590 (N.D. Tex.)). Finally, the Court's opinion considers the testimony of the witnesses in a light most favorable to Sheriff Callahan rather than Brown. (Op. p. 8). Contrary to this Court's opinion, characterizing evidence of Sheriff Callahan's deliberate indifference as "scant", his deliberate indifference extensively persuades the record.

### B. Illegal Standing Orders

This Court must review Sheriff Callahan's actions to determine whether they were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004) (citations

omitted). It is not necessary for the act complained of to be "illegal" just objectively unreasonable. With regard to Sheriff Callahan's conduct in this case, the Court's burden of wearing the "objectively reasonable" glasses has been removed. Specifically, Sheriff Callahan's conduct cannot be considered objectively reasonable because it was illegal. More specifically, Sheriff Callahan allowed standing orders to remain in place that required Licensed Vocational Nurses (LVNs) to prescribe narcotics to inmates, a practice prohibited by Texas law. (USCA5, Vol. 10, Jt. App. 294-296; 298-300). Additionally, Sheriff Callahan allowed these same LVNs to treat patients without any medical supervision, another practice prohibited by Texas law. (USCA5, Vol. 10, Jt. App.296-297).

During this illegal period of unsupervised and unlawful practice of medicine, Jason Brown became the unfortunate guest of the Wichita County Jail. During this time, the standing illegal order approved by Sheriff Callahan allowed an illegal prescription medication that did not treat his symptoms but rather "masks" them, to be administered. These illegal practices murdered Jason Brown.

If Sheriff Callahan had been an administrator of a school, hospital or assisted living facility, he would be subject to criminal penalty. As the administrator of Wichita County Jail, he is no different than these other administrators. What he did here was clearly criminal or illegal behavior. Whatever legally exacting standard must be used to evaluate deliberate indifference, it does not embrace undeniable criminal conduct as "objectively reasonable".

### C. Prior Incidents

Of course, Sheriff Callahan is not likely to see any criminal indictment for

matters that occur at the Wichita County Jail because, by his own admission and under charge of the state, he is the master of all that occurs there. In this role he also investigates every complaint, including those regarding the denial of medical care.

Although Wichita County produced complaints regarding the denial of medical care made by William Jeffrey Carlisle, Sandy Burris, Sandra Hall, Judy Jefferson and Martin Universe, Sheriff Callahan investigated these complaints himself. Not surprisingly, he found no fault with his procedures. Even after Jason Brown's death, Sheriff Callahan did not find any fault with his procedures. As a result of his continued indifference, Wilbert Henson died. Accordingly, no independent verification of previous medical claims exists and it never would have existed now had not Brown and Henson's attorneys called the Sheriff to task. Accordingly, when the Court's opinion states "The Browns have offered no evidence that any detainee before Jason Brown experienced allegedly substandard medical care or any denial of his constitutional right to receive medical care" it relies on the assurances of the fox about the integrity of the henhouse.

Prior recorded instances of deliberate indifference are not the only way to prove the existence of a policy plan or practice that a municipal actor disregarded a known or obvious consequence of his action. (*Palo, et al v. Dallas Co.*, 2007 WL 2140590 (N.D. Tex.)) Subsequent actions may be used to demonstrate such callous behavior. (See *Palo, et al v. Dallas Co.*, 2007 WL 2140590 (N.D. Tex.))

That is exactly what the record reflects. That evidence, with which this Court is thoroughly familiar, is *Estate of Henson v. Wichita County, Tex.*, 2008 WL 3287098 (N.D. Tex.). The *Henson* case clearly demonstrates that Sheriff Callahan continued to allow unsupervised medical practice, illegal prescription of medication and Dr. Bolin's

intimidation to occur despite the fact that these practices killed <u>both</u> Mr. Henson and Jason Brown.

### D. Nurse Intimidation

Sheriff Callahan admits that he knew of Dr. Bolin's practice of intimidation. (USCA5, p. 3047-3048). The purpose of the intimidation was to discourage the LVNs from providing medical care to inmates. However, Sheriff Callahan contends that his requesting Dr. Bolin to "sweeten up" and telling the Jail nurse staff to ignore Dr. Bolin's demeanor is sufficient evidence to show that he did not turn a blind-eye to nurse complaints about Dr. Bolin. *Id.* On the contrary, this evidence shows that Sheriff Callahan was fully aware of a pattern of nurse fear and intimidation and he did absolutely nothing meaningful to stop it. Over a 10–12 year period Sherriff Callahan had to talk to Dr. Bolin about his demeanor with the Jail nurse staff on at least two to three separate occasions and did nothing more than tell Dr. Bolin to "sweeten up" and the nurses to ignore him. (USCA5, p. 3047-3048). He was aware that his cajoling did not fix the problem. (2d.)

On the night Jason Brown entered the Wichita County Jail, Sheriff Callahan's indifference to the problem manifest itself similar to the two former nurses who detailed of nurse intimidation and fear of Dr. Bolin when seeking medical treatment of inmates. With regard to Jason Brown, Nurse Krajca thought Dr. Bolin would rebuke her for treating Jason Brown at all; much less send him to the hospital. Out of fear, she did not contact Dr. Bolin. Instead, she moved Jason Brown to a cell to die. (USCA5, Vol. 10, Jt. App. 163; USCA5, p. 3050).

The District Court was correct in concluding that Sheriff Callahan was aware of the custom of Nurse Intimidation and that the obviousness of the risk of harm from such a custom was a "substantial risk of serious harm to inmates." (USCA5, p. 3054).

## III.

## SUMMARY & CONCLUSION

The testimony, as described in this Court's Opinion contains some contradictions. The meaning of this testimony may be subject to more than one interpretation. However, if the proper evidentiary analysis is conducted and every inference is drawn in Brown's favor, the evidence demonstrates facts that would lead a reasonable person to believe that Sheriff Callahan was deliberately indifferent to Jason Brown's constitutional rights. The record is not scant. To the contrary, it is satiated with atrocious and criminal conduct.

The evidence, when viewed most favorably to the Browns, demonstrates the following about Sheriff Callahan:

1.) He commissioned and approved standing orders that violated Texas law;

2.) He commissioned and approved standing orders that called for the unlicensed practice of medicine in two ways:

    a.) unsupervised LVNs

    b.) prescription of medicine by those not licensed to prescribe

3.) He was fully aware that his physician intimidated the nurses;

4.) He was fully aware that the result of the intimidation was directed at discouraging medical treatment for inmates;

5.) He did nothing to actually change the practice of intimidation.

6.) He then became aware that: Jason Brown died while bleeding to death at the Wichita County Jail. Jason Brown, while pleading for help, was diagnosed by unsupervised LVNs. He was prescribed a totally inappropriate medication by

LVNs. That medication masked his symptoms. He became aware that Nurse Krajca's first thought when assessing what to do with the, then alive, Brown was not how to treat him, but how to avoid angering Dr. Bolin.

7.) He did nothing to change any pattern or practice at the Wichita County Jail.

8.) A short time later, Wilbert Henson was killed by Sheriff Callahan's same mechanism.

If these facts are not sufficient evidence of deliberate indifference to overcome a summary judgment on qualified immunity, then the defense should be renamed absolute immunity. Barring a confessional affidavit from an administrator such as Callahan, no inmate will ever be able to assert his constitutional rights. Accordingly, the Browns respectively request that this Court grant this Petition for Rehearing and after Rehearing, affirm the District Court's denial of Sheriff Callahan's motion for summary judgment.

## IV.
## PRAYER FOR REHEARING

WHEREFORE, PREMISES CONSIDERED, Brown prays that the Court grant a rehearing and restore this case to the calendar for rehearing and affirm the District Court's judgment.

Respectfully submitted,

Geffrey W. Anderson
State Bar No. 00786980
Guy H. Riddle
State Bar No. 00797319
**ANDERSON, RIDDLE & KUEHLER, L.L.P.**
1604 8th Avenue
Fort Worth, Texas 76104
817-334-0059 [Telephone]
817-334-0425 [Facsimile]
Email: riddle@asrtexas.com

**ATTORNEYS FOR APPELLEES**

## CERTIFICATE OF COMPLIANCE

Pursuant to 5TH CIR. R. 32.2 and 32.3, the undersigned certifies that this Petition complies with the type-volume limitations of FED. R. APP. P. 32(a)(7).

1. EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5TH CIR. R. 32.2, THE BRIEF CONTAINS:

   A.   2,177 words; 293 lines

2. THE BRIEF HAS BEEN PREPARED

   A.   in proportionally spaced typeface using:

   Microsoft Word, Office 2003, in Times New Roman, 14-point font

3. THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN FED. R. APP. P. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October, 2010, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Robert S. Davis
David Iglesias
Flowers Davis, PLLC
1021 E.S.E. Loop 323, Suite 200
Tyler, Texas 75701

GEFFREY W. ANDERSON
GUY H. RIDDLE

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 7, 2010

No. 09-10843

Lyle W. Cayce
Clerk

JANIS L. BROWN, Individually, and as Personal Representative of the Estate of Jason Ray Brown, Deceased; BILLY RAY BROWN,

Plaintiffs - Appellees

v.

THOMAS J. CALLAHAN, Sheriff of Wichita County, Texas, in his Individual and Official Capacity,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, PRADO, Circuit Judge, and OZERDEN, District Judge. [*]

EDITH H. JONES, Chief Judge:

Jason Brown died tragically while detained in the Wichita County Jail. His estate sued Sheriff Thomas Callahan for failure to train and supervise the jail's medical employees and for maintaining an unconstitutional policy of deliberate indifference to detainees' serious medical needs. The district court denied Sheriff Callahan's motion for summary judgment based on qualified

---

[*] District Judge of the Southern District of Mississippi, sitting by designation.

No. 09-10843

immunity, and he appeals. Because there is insufficient evidence of deliberate indifference or objective unreasonableness by the Sheriff, we reverse.

## I. BACKGROUND

The underlying facts are not in dispute. Jason Brown died of a gastrointestinal hemorrhage while in pretrial custody in the Wichita County Jail. During the 55 hours between Brown's book-in and his death, he informed the intake nurse of multiple serious medical problems, repeatedly vomited what appeared to be blood, complained of feeling unwell, requested to be sent to the emergency room, and ultimately was non-responsive for extended periods of time. During his confinement, Brown lacked access to his prescription medications. An attending jail nurse, Nurse Krajca, treated Brown's symptoms by giving him liquid antacid, placing him in a medical solitary cell, and administering an anti-nausea suppository. Brown was neither transferred to a hospital ER, nor was he seen by the jail's supervising physician, Dr. Bolin. In fact, no one from the jail ever contacted Dr. Bolin for his advice on Jason Brown. The jail's deputies, however, periodically checked Brown's condition from outside the medical solitary cell. When the deputies checked on him the next evening, Brown was dead.

Brown's parents, Janis and Billy Ray Brown, filed suit individually and as representatives of the estate of Jason Brown against Sheriff Callahan and others. Relevant to this appeal, the Appellees contend that Sheriff Callahan is liable for Brown's death in his individual capacity under 42 U.S.C. § 1983 under two possible theories. First, they argue that Callahan is personally responsible for training staff and supervising the medical treatment of individuals in the custody of the jail. More specifically, the Appellees allege that Sheriff Callahan

2

No. 09-10843

failed to supervise properly the jail staff and Dr. Bolin, who intimidated the nurses, discouraging them from contacting the doctor or referring patients to the ER for further medical treatment.    Second, the Browns allege that the Sheriff ratified as custom or policy Dr. Bolin's intimidation of the nursing staff that caused their son's death.

Sheriff Callahan moved for summary judgment, asserting qualified immunity.  The district court  denied his motion.  It found that the Appellees offered sufficient evidence to create material fact issues whether (a) Sheriff Callahan failed adequately to supervise the jail's medical personnel, and (b) approved or ratified "Defendant Bolin's pattern and practice of harassing and intimidating jail nurses when they would call him with questions regarding nursing care, discouraging sending inmates to the hospital causing Brown's death."  The same evidence persuaded the court that Sheriff Callahan's actions may have been objectively unreasonable and therefore not protected by qualified immunity.  Sheriff Callahan appeals.

## II. STANDARD OF REVIEW

This court reviews a denial of a public official's motion for summary judgment on the issue of qualified immunity by determining "whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc). The court reviews *de novo* the district court's legal determination of the materiality of the identified fact issues. *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 634 (5th Cir. 1999).  Summary judgment is required if the movant establishes that there

No. 09-10843

are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

A qualified immunity defense alters the usual summary judgment burden of proof. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Id.* The plaintiff bears the burden of negating qualified immunity, *id.*, but all inferences are drawn in his favor.

The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). A court may rely on either prong of the defense in its analysis. *Id.*

If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citations omitted). Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the defendant's actions must have been readily

apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been illegal. *Id.* at 236-37. An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

## III. DISCUSSION

As a pretrial detainee, Jason Brown had a clearly established Fourteenth Amendment right not to be denied, by deliberate indifference, attention to his serious medical needs. *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). Whether Dr. Bolin, jail nurses, or other staff violated Brown's rights is not before us; the Browns' case against Dr. Bolin and Nurse Kracja, awaits trial pending the outcome of this appeal, and we express no opinion on its merits. Sheriff Callahan had no knowledge of and did not participate in the events surrounding Brown's fatal period of detention. Thus, the Sheriff can only be held liable in his capacity as a supervisor of the jail for his own unconstitutional conduct. *City of Canton v. Harris*, 489 U.S. 378, 385 (1978) (no respondeat superior liability of supervisors).

The Browns have alleged two theories of supervisory liability, which, being founded on the same facts, may be discussed together. Mirroring the requirements in this circuit, they contend first that Callahan failed to train or supervise Dr. Bolin and the jail staff; that a causal link exists between the failure to train or supervise and the unconstitutional denial of medical care to Jason; and his failure to train or supervise amounts to deliberate indifference.

No. 09-10843

*Estate of Davis v. City of N. Richland Hills,* 406 F.3d 375, 381-82 (5th Cir. 2005).[1] Their second theory of liability is that the Sheriff ratified or condoned Dr. Bolin's custom or policy of intimidating nurses from providing needed medical care, and the custom or policy was "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Cozzo v. Tangipahoa Parish,* 279 F.3d 273, 289 (5th Cir. 2002) (citing *Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir. 1987).

For purposes of analysis, we assume *arguendo* that Jason Brown experienced an unconstitutional denial of medical care while a pretrial detainee, and that the denial of care enabled his gastrointestinal hemorrhage to become fatal.

The facts relevant to the Browns' theories, developed in discovery, demonstrate that the Sheriff is legally responsible for operating the county jail. TEX. LOC. GOVT. CODE ANN. § 351.041(a). In the mid 1990's the County executed a contract with Dr. Bolin explicitly requiring the doctor to supervise the professional work of the jail's medical staff, six Licensed Vocational Nurses (LVNs), while the Sheriff supervised their employment. During the period in question, the jail's formal medical care plan complied with state standards. The Browns have offered no evidence that any detainee before Jason Brown experienced allegedly substandard medical care or any denial of his constitutional right to receive medical care at the Wichita County jail.

---

[1] A supervisor may be held liable under § 1983 for failure to train or supervise subordinates if (1) the supervisor failed to train or supervise; (2) a causal link exists between the failure and violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Estate of Davis,* 406 F.3d at 381.

No. 09-10843

Viewed in the light most favorable to the Browns, however, there was conflicting testimony from Callahan, Dr. Bolin, and present and former nurses concerning the extent and quality of Callahan's supervision of Dr. Bolin and the nurses. Two former jail nurses attested to two incidents in which each consulted Dr. Bolin about an inmate's medical condition and was instructed not to send the patient to the emergency room for treatment. The nurses did so anyway. Their affidavits state that Dr. Bolin was rude to nurses and intimidated them, and he disliked being called for advice at nighttime. Each nurse complained to the Sheriff about the two specific confrontations with Dr. Bolin over sending a patient to the ER. These nurses also claim to have witnessed Dr. Bolin's mistreatment of other nurses on the jail staff. Additionally, Nurse Kracja, who oversaw Jason Brown's treatment, expressed reluctance to send Brown to the ER because she did not want an "ass-chewing" from the doctor.[2]

Sheriff Callahan did not deny that he was aware of Dr. Bolin's unpleasant behavior during a ten-year stint as the jail's contract physician. He admitted that Bolin "gripes all the time" at employees. The Sheriff's response was two-fold. He testified that he advised the doctor on several occasions to "sweeten up" toward the nurses. The Sheriff also instructed the nurses to continue calling the doctor at any time, irrespective of Dr. Bolin's grumpiness, if they felt it appropriate.[3]

---

[2] Specifically, Nurse Kracja told Detention Officer Sours during a cigarette break (after she had ordered Brown transferred to a medical solitary cell): "[d]o you know what kind of ass-chewing I would get from Dr. Bolin if I sent [Brown] to the hospital in the good health that he is in?" We interpret this ambiguous remark in the light most favorable to the Browns.

[3] In their briefing, the Browns emphasize a contention that the nurses were asked to perform medical duties, *e.g.* assessment and treatment of patients and administration of medication, beyond their training as LVNs. The district court cited a lack of evidence of any

No. 09-10843

These last two paragraphs summarize the evidence found sufficient by the district court to raise genuine and material fact issues not only on each prong of the Browns' theories of unconstitutional supervision and an unconstitutional policy, but also on whether Callahan's conduct was so objectively unreasonable, *i.e.* plainly incompetent or a knowing violation of law, that a jury could deny him qualified immunity. Despite our sympathy for Jason's plight and our respect for the district court's conscientious effort, we must disagree. Even if we assume *arguendo* that the sheriff's supervision of Dr. Bolin or the nursing staff was inadequate and that there was a causal link between his failure and Brown's death, we cannot conclude that there is a genuine material fact issue as to Callahan's deliberate indifference to constitutional rights. Evidence is also lacking to prove the objective unreasonableness, for immunity purposes, of Sheriff Callahan's management of the jail's medical care.

Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). Deliberate indifference implies an official's actual knowledge of facts showing that a risk of serious harm exists as well as the official's having actually drawn

---

specific training deficiencies although the court viewed this contention as also related to a failure to supervise the nurses. Even if, as a hypothetical matter, LVNs were insufficiently trained for the duties they actually performed at the Wichita County Jail, nothing about the history of jail medical operations made it "obviously likely that a constitutional violation of this sort would result." The record does not show past incidents when a detainee died or suffered grievous harm because nursing staff failed to properly assess the severity of the detainee's symptoms. The record does not show instances where LVNs were obviously inadequately trained, leading to gross misdiagnoses or harms resulting from the prescription and administration of improper drugs. In these circumstances, the district court properly focused on the failure to supervise theory rather than failure to train.

No. 09-10843

that inference. *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (internal quotation marks and citations omitted). Deliberate indifference is more than mere negligence or even gross negligence. *City of Canton*, 489 U.S. at 388. Proof of deliberate indifference normally requires a plaintiff to show a pattern of violations and that the inadequate training or supervision is "obvious and obviously likely to result in a constitutional violation." *Estate of Davis*, 406 F.3d at 381 (citations omitted).

Here, evidence of Sheriff Callahan's failure to supervise Dr. Bolin and the nursing staff is simply too attenuated to permit the inference that the Sheriff was deliberately indifferent, *i.e.*, that he ignored a known or obvious risk of unconstitutionally deficient medical care. The complaints are that he condoned or ratified Dr. Bolin's harassing and intimidation of the nursing staff, failed to supervise Dr. Bolin's actions that discouraged the nurses from calling the doctor or sending patients to the ER, and failed to supervise the nurses to work with Dr. Bolin for the inmates' best care. A jury would be asked to infer from Dr. Bolin's unpleasant attitude not only that the nurses would be unhappy but that they would be so intimidated as not to respond to the inmates' serious medical needs.

Yet apart from Nurse Kracja's expressed fear of an "ass-chewing," there is no allegation of unconstitutionally deficient medical care attributable to fear of Dr. Bolin's response before Jason Brown died. That two nurses decided to send inmates to the ER over Dr. Bolin's objections proves the opposite of intimidation. The Appellees do not even allege that nurses had been disciplined or terminated in the past for seeking Dr. Bolin's assistance. A doctor's bad temper is nothing for his employing organization to be proud of, but standing

9

No. 09-10843

alone, it does not create a known or obvious risk of inadequate medical care. Further, the fact that the nurses and Dr. Bolin disagreed in two instances on whether particular inmates should be sent to the ER does not, without more proof, raise an inference that those other inmates were subjected to constitutionally inadequate care. Appellees do not allege that Dr. Bolin refused to consult with nurses when presented with symptoms resembling those of Brown, or when any detainee exhibited other similarly severe symptoms like vomiting blood. They do not allege that nurses had tried in the past to refer similarly ailing inmates to the ER but were denied, either because of Dr. Bolin or otherwise.

The Browns, in sum, fail to establish a factual connection between Dr. Bolin's demeanor and any actual adverse consequences to the nursing staff or any prior instance in which the quality of the inmates' medical care was diminished because of Dr. Bolin's communication problems with them. In light of these deficiencies, the risk arising from Dr. Bolin's behavior was not clearly related to constitutionally inadequate medical care. No reasonable jury could find that Sheriff Callahan knew of, much less disregarded or ignored an obvious risk. Indeed, he counseled Dr. Bolin and ordered the nurses to act appropriately notwithstanding Bolin's distemper, and the Browns have shown no prior instance in which the Sheriff's instruction to the nurses was not followed.[4] The ultimate question is not whether a jury, in hindsight, could conclude that the Sheriff could have engaged in better supervision of the jail's medical care but

---

[4] The Browns do not contend, nor is there a basis for finding, that the treatment accorded Jason falls within the "single incident" exception to the usual requirement that to prove deliberate indifference, a supervisor must be on notice of a pattern of similar unconstitutional behavior. *Estate of Davis*, 406 F.3d at 382, 383.

No. 09-10843

whether his supervision was so utterly heedless as to amount to deliberate indifference. That stringent test is not met here.

The district court also held that a fact issue exists as to whether Sheriff Callahan condoned or ratified a "policy" of nurse intimidation carried out by Dr. Bolin that discouraged nurses from seeking emergency care for inmates with serious medical needs. It is unlikely such a policy can be legitimately inferred from the scant evidence above without disserving the principle that a "policy" must be "persistent," "widespread," "common" and "well settled." *See Cozza,* 279 F.3d at 289. Dr. Bolin's "policy" may have been to mistreat the staff, but whether the policy's effect was to discourage inmates from receiving adequate medical care is barely substantiated. Nonetheless, the Sheriff's potential liability for an unconstitutional policy runs afoul of the second prong of qualified immunity analysis, where the dispositive inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001). This court has interpreted "clearly established law" on the subject of policy promulgation to require "an intentional choice" and amount to subjective deliberate indifference. *Rhyne v. Henderson Cnty.,* 973 F.2d 386, 392 (5th Cir. 1992). It must be "obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights." *Id.,* quoted in *Brumfield v. Hollins,* 551 F.3d 322, 328 (5th Cir. 2008). Applied to this case, it would have had to be clear to the Sheriff that condoning or ratifying Dr. Bolin's practice of nurse intimidation would in fact discourage nurses from seeking constitutionally adequate medical care for the detainees. That he did not have the subjective knowledge required for deliberate indifference and imputation of liability has been explained above.

11

No. 09-10843

There is also insufficient evidence from which a reasonable jury could infer that Callahan's conduct did not deserve qualified immunity. The district court relied on the same evidence related above that shows, at worst, the Sheriff's negligent supervision of Dr. Bolin and the doctor's relationship with the nursing staff. In the absence of any prior incidents that connoted inadequate medical care at the jail, it is impossible to infer that the Sheriff was essentially callous about inmate medical care or had any reason to suspect the level of care had become or could become constitutionally inadequate. The Sheriff was neither plainly incompetent nor knowingly violating the law, nor were his actions, in the circumstances he faced, objectively unreasonable. He took some steps to curtail Dr. Bolin's intimidation and require the nurses to call the doctor as necessary. A "pattern" of verbal nurse intimidation and harassment cannot alone place a supervisor on notice that inmates are receiving medical care so deficient as to violate the Constitution.

## CONCLUSION

Jason Brown's tragic, lonely death deserved investigation and a careful review of the Wichita County Jail's practices toward visibly ill inmates. Neither the demanding test for supervisory § 1983 liability, however, nor the test for official qualified immunity has been factually demonstrated against Sheriff Callahan simply because he knew the jail doctor mistreated the nursing staff.

**REVERSED.**